## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ARKANSAS HEART HOSPITAL, LLC** | ) | |
| 1701 S Shackleford Road | ) | |
| Little Rock, Arkansas 72211 | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **MARTIN J. WALSH**, | ) | |
| in his official capacity as | ) | |
| Secretary of Labor | ) | |
| U.S. Department of Labor | ) | |
| 200 Constitution Ave NW | ) | |
| Washington, DC 20210, | ) | |
| | ) | |
| **BRIAN PASTERNAK**, | ) | |
| in his official capacity as | ) | |
| Administrator | ) | Civil Action No. _____ |
| Office of Foreign Labor Certification | ) | |
| U.S. Department of Labor | ) | |
| 200 Constitution Ave NW, Room N-5311 | ) | |
| Washington, DC 20210, | ) | |
| | ) | |
| **LINDSEY BALDWIN**, | ) | |
| in her official capacity as | ) | |
| Director | ) | |
| National Prevailing Wage Center | ) | |
| Department of Labor | ) | |
| 200 Constitution Ave NW, Room N-5311 | ) | |
| Washington, DC 20210, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR WRIT OF MANDAMUS
## AND DECLARATORY JUDGMENT

*"There will be a national shortage of more than 150,000 registered nurses by 2020 and more than 500,000 by 2030."*[1]

*"The U.S. Bureau of Labor Statistics projects that more than 275,000 additional nurses are needed from 2020 to 2030, and that employment opportunities for nurses will grow at 9 percent, faster than all other occupations from 2016 through 2026."*[2]

*"The nation will need an additional 1.2 million nurses by next year to meet the growing demand for their services and to replace those leaving."*[3]

\* \* \*

COMES NOW, Plaintiff Arkansas Heart Hospital, LLC ("Arkansas Heart"), by and through undersigned counsel, and respectfully brings this Complaint for Writ of Mandamus and Declaratory Judgment against Martin J. Wash; Brian Pasternak, and Lindsey Baldwin, in their official capacities as Secretary of Labor, Administrator of the Office of Foreign Labor Certification, and Center Director of the National Prevailing Wage Center, respectively, and in support thereof states as follows:

## INTRODUCTION

1.    This is an action to compel Defendants and those acting under them to immediately adjudicate two (2) Form ETA-9141, Applications for Prevailing Wage Determination ("PWD") that were filed by Arkansas Heart on or about April 7, 2022.  See Form ETA-9141, Applications

---

[1] See HP-2022-13, "Impact of the COVID-19 Pandemic on the Hospital and Outpatient Clinician Workforce," Assistant Secretary for Planning & Evaluation, Office of Health Policy, U.S. Department of Health and Human Services (May 3, 2022).

[2] See News Release 22-1946-NAT, U.S. Dep't of Labor, "US Department of Labor Announces $80M Funding Opportunity to Help Train, Expand, Diversify Nursing Workforce; Address Shortage of Nurses (available at https://www.dol.gov/newsroom/releases/eta/eta20221003).

[3] See David Levine, "U.S. Faces Crisis of Burned-Out Health Care Workers," U.S. News & World Report (Nov. 15, 2021) quoting Dr. Ernest Grant, President, American Nurses Association.

for PWD (Registered Nurse Critical), filed on April 7, 2022 ("PWD Applications") (attached hereto as **Exhibits A & B**); <u>see also</u> Declaration of Andrea Nelson (attached hereto as **Exhibit C**). As of the date of this filing, the PWD Application filed by Arkansas Heart have now been pending for three-hundred and forty-two (342) days.

2.      In connection with its efforts to employ approximately twenty (20) foreign Registered Nurses due to the ongoing nursing shortage crisis in the United States—and in accordance with 8 U.S.C. §§ 1153(b)(3)(A)(ii) and 1153(b)(3)(C), as well as 20 C.F.R. §§ 656.17(f)(5) and 656.40(a)—Arkansas Heart filed two (2) PWD Applications with the U.S. Department of Labor  ("DOL") as a part of the Employment-Based Immigration: Third Preference ("EB-3") process.  <u>See</u> Exhibit C at ¶ 6.  DOL has unreasonably failed to issue the PWDs requested by Arkansas Heart thus stymieing the Hospital's progress in hiring foreign nurses to mitigate its critical shortage of nursing staff.  <u>Id.</u> at ¶ 8.

3.      According to DOL itself, unprecedented demands that the pandemic placed on the Nation's nurses—combined with retirements and an aging workforce—have greatly increased the need for nursing workers in the United States.[4]  There is undoubtedly a nursing shortage crisis in the United States affecting current and future nurses; health care providers, facilities, and institutions; and those who benefit most from our healthcare system:  United States citizen and resident patients requiring medical attention.

4.      Flowing from ongoing nursing shortage crisis, in October 2022, DOL began an initiative to provide $80 million in grants and additional funding opportunities through its "Nursing Expansion Grant Program," aimed at incentivizing nursing training programs designed to expand

---

[4] <u>See</u> News Release22-1946-NAT, U.S. Dep't of Labor, "US Department of Labor Announces $80M Funding Opportunity to Help Train, Expand, Diversify Nursing Workforce; Address Shortage of Nurses (available at https://www.dol.gov/newsroom/releases/eta/eta20221003).

the pipeline of nursing professionals entering the United States workforce. The implementation of this program evidences DOL's recognition, appreciation, and understanding of the critical shortage of Registered Nurses in the United States.

5.    Despite its acknowledgment of the ongoing nursing shortage crisis, DOL has yet to render a determination on the PWD Applications filed by Arkansas Heart. A PWD by DOL is a necessary requisite for all steps to follow in the EB-3 process; without a PWD, Arkansas Heart cannot move forward with its efforts to recruit and hire foreign nurses to address its dire staffing shortages.

6.    DOL's unlawfully withheld and unreasonably delayed issuance of PWDs in connection with the Applications filed by Arkansas Heart is incongruous with DOL reports of its processing times for PWD Applications at large:

| PERM | | | |
|---|---|---|---|
| Receipt Month[ii] | Requests Received | Determinations Issued[iii] | Average Calendar Days to Process[iv] |
| December 2021 | 12,276 | 12,273 | 185 |
| January 2022 | 14,009 | 13,657 | 201 |
| February 2022 | 15,399 | 14,835 | 201 |
| March 2022 | 17,548 | 16,836 | 200 |
| April 2022 | 17,181 | 16,499 | 205 |
| May 2022 | 15,827 | 15,212 | 208 |
| June 2022 | 16,464 | 15,673 | 202 |
| July 2022 | 16,428 | 15,111 | 195 |
| August 2022 | 18,131 | 8,747 | 194 |
| September 2022 | 16,932 | -- | -- |
| October 2022 | 16,385 | -- | -- |
| November 2022 | 15,557 | -- | -- |
| December 2022 | 15,628 | -- | -- |
| January 2023 | 18,267 | -- | -- |

See U.S. Dep't of Labor, "Prevailing Wage Determination Processing Times," (Feb. 28, 2023) (available at: https://flag.dol.gov/processingtimes). According to DOL's own data, the PWD Applications filed by Arkansas Heart have been pending in excess of one-hundred thirty-six days

(136) beyond the average processing time for PWD Applications, which is two-hundred and five (205) days.  Put another way, Arkansas Heart's PWD Applications—seeking determination by DOL of "the average wage paid to similarly employed workers in a specific occupation in the area of intended employment," <u>see</u> 20 C.F.R. § 656.3, concerning an ordinary, common, regular, and traditional occupation (nursing)—are currently at one-hundred sixty-five (165) percent of the average processing time by DOL for PWD Applications overall.  Indeed, and inexplicably, per its report above, DOL has issued over ninety-six (96) percent of PWDs requested in April 2022, the same month Arkansas Heart filed its PWD Applications.

7.    Continued delay by DOL in issuing the PWDs requested by Arkansas Heart is hindering the Hospital's ability to recruit and retain foreign nursing staff to serve the needs of its administration and patients who receive care via the healthcare facility.

8.    As a result, Arkansas Heart now respectfully requests this Court compel DOL to perform its mandatory duty to issue PWDs per the Hospital's Applications filed on April 7, 2022, so the Hospital can move forward with its EB-3 process culminating in the recruitment and employment of approximately twenty (20) foreign Registered Nurses.

## <u>JURISDICTION</u>

9.    This is a civil action brought pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his duty), to redress the deprivation of rights, privileges, and immunities secured to Arkansas Heart, by which statutes jurisdiction is conferred, and to compel DOL to perform a duty that it owes to Arkansas Heart.   Jurisdiction is further conferred by 5 U.S.C. §§ 555(b) and 704, the Administrative Procedure Act ("APA").

10.    Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."   Arkansas Heart is challenging undue delay by DOL in issuing two (2) PWDs.   Jurisdiction thus exists for this Court to consider whether DOL possesses the authority to withhold and delay adjudication of the PWD Applications at issue.

11.    The Permanent Labor Certification process is administered by DOL in accordance with the Immigration and Nationality Act ("INA") and federal regulations.   See 8 U.S.C. §§ 1153(b)(3)(A)(ii) and 1153(b)(3)(C); 20 C.F.R. §656.2(c), 656.17(f)(5), 656.40(a).   Under this authority, DOL is charged with the responsibility of verifying to the U.S. Secretary of State and U.S. Secretary of Homeland Security that the employment of a foreign worker wishing to enter the United States for employment will not adversely affect the wages and working conditions of workers in the United States similarly employed.   See 20 C.F.R. §656.2 (c)(1)(ii).

12.    The National Prevailing Wage Center ("NPWC") of DOL is responsible for making PWDs and providing employers who filed a Form ETA 9141, Application for Prevailing Wage Determination, with an acceptable potential prevailing wage rate.   See 20 C.F.R. §656.40(b).

13.    The APA requires DOL to carry out its duties within a reasonable time.   See 5 U.S.C. § 555(b) (providing that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.").   Where an agency fails to render a decision within a reasonable time, the Court has authority under 5 U.S.C. § 706(1) to compel the agency to perform "action unlawfully withheld or unreasonable delayed."   See 5 U.S.C. § 706(1).

14.    The APA generally allows courts to consider only the existing administrative record when reviewing agency decision-making and determining whether agency decisions are arbitrary

and capricious.  However, the Supreme Court, in <u>Department of Commerce v. New York</u>, 139 S. Ct. 2552, 2559 (2019), provided that this rule is not absolute and looked beyond the record in blocking an agency decision that it found to be based on a "contrived," pretextual rationale.  <u>See Dep't of Commerce</u>, 139 S. Ct. at 2559.  The facts in this case demonstrate that the Defendants have acted in bad faith or exhibited improper behavior to the detriment of Arkansas Heart.

15.     Finally, this Court has jurisdiction pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, to declare the failure of DOL to adjudicate Arkansas Heart's PWD Applications in a reasonable amount of time to be arbitrary and capricious, and a violation of the INA, federal regulations, and the APA.  <u>Peoples v U.S. Dep't of Agric.</u>, 427 F.2d 561, 565 (D.C. Cir. 1970); <u>see also</u> 5 U.S.C. §§ 555(b), 706(1)-(2).

## VENUE

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because: (1) Defendants are agencies of the United States or officers or employees thereof acting in their official capacity or under the color of legal authority; (2) no real property in involved in this action; and (3) Defendants all maintain offices within this district.

## PARTIES

17.     Arkansas Heart is a world-class cardiovascular and cardiothoracic surgical hospital located in Little Rock, Arkansas.  Due to the nursing shortage crisis, Arkansas Heart submitted two (2) Form ETA 9141, Applications for Prevailing Wage Determination, relating to the position of "Register Nurse Critical." <u>See</u> Exhibits A-B; <u>see also</u> Exhibit C at ¶ 6.  However, DOL has failed to issue the requested PWD to date. Due to the unreasonable and unjustified delay by Defendants, adjudication of Arkansas Heart's two (2) PWD Applications have now been pending for nearly an entire calendar year.

18.     Defendant Martin J. Walsh, the U.S. Secretary of Labor, is the highest-ranking official within the U.S. Department of Labor ("DOL").   Mr. Walsh is responsible for the implementation of the INA and for ensuring compliance with applicable federal laws, including the APA through his supervisory duties over functions of the DOL, including the Foreign Labor Certification Process, including issuance of PWDs.  Mr. Walsh is sued in his official capacity as an agent of the Government of the United States.

19.     Defendant Bryan Paternak is the Administrator of the Office of Foreign Labor within DOL.  The Office of Foreign Labor is home to the National Prevailing Wage Center, which processes PWD Applications.   Mr. Paternak is being sued in his official capacity as an agent of the Government of the United States.

20.     Defendant Lindsey Baldwin is Director of the National Prevailing Wage Center, which determines prevailing wages and issues PWDs.  She is sued in her official capacity as an agent of the Government of the United States.

## FACTUAL ALLEGATIONS & LEGAL BACKGROUND

### Statutory, Regulatory Framework
### Related to Prevailing Wage Determinations

21.     The Immigration and Nationality Act ("INA") establishes United States immigration procedures, including Departmental responsibilities.  The INA assigns responsibility of overseeing the Permanent Labor Certification Process to DOL.  The primary role is to certify to the U.S. Secretary of State and U.S. Secretary of Homeland Security there are insufficient United States workers who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor; further, DOL must also certify that the employment of such alien will not adversely

affect the wages and working conditions of workers in the United States similarly employed.  See

20 C.F.R. §656.2(c)(1), (i), and (ii).

22.     Prospective employers who wish to request a prevailing wage determination must

submit a Form ETA 9141, Application for Prevailing Wage Determination.  Upon submission, the

National Prevailing Wage Center ("NPWC") is responsible for determining the appropriate wage

in accordance with the profession and duties specified in each individual PWD Application.  See

20 C.F.R. §656.40(a) and (b).

### The National Processing Center has Unreasonably Delayed
### Adjudication of Arkansas Heart's PWD Applications

23.     On or about April 7, 2022 Arkansas Heart Hospital submitted two (2) Form ETA

9141, Applications for Prevailing Wage Determinations.  See Exhibits A-B, see also Exhibit C at

¶ 6.  Arkansas Heart's PWD Applications are a requisite step in the process of obtaining a

Permanent Labor Certification by DOL.  Arkansas Heart engaged in the Permanent Labor

Certification process out of necessity due to the ongoing nursing shortage crisis.  In increasing

numbers, hospitals such as Arkansas Heart are seeking to hire foreign Registered Nurses to

mitigate the critical, dire, and ongoing shortage of nursing staff at their facilities, in light of the

high demand for nurses nationwide, and their inability to recruit and hire Registered Nurses

domestic to the United States.

24.     The NPWC of DOL has failed to provide Arkansas Heart with a PWD in a timely,

efficient manner.  Due to this delay, Arkansas Heart is unable to advance its process of hiring

foreign national Registered Nurses to resolve staffing shortages detrimentally impacting Hospital

operations and provision of healthcare within its Region.

25.     DOL is well-aware of the nursing shortage crisis in the United States.  Its

investment of $80 million into the Nursing Expansion Grant Program elucidates DOL's desire to

rectify the nursing shortage nationwide.  There are varying modes of attempting to address and resolve the current nursing shortage.  The nursing shortage crisis is so complex and urgent that a triage of multiple remedies is required.  Investing money to train, expand, and diversity the nursing workforce within the United States, as implemented by DOL, is one potential avenue; however, hiring foreign Registered Nurses, as sought by Arkansas Heart, constitutes a viable alternative solution.  Both responses are valid; neither is in competition with the other.  As is evident, it will take a confluence of efforts across the healthcare sector to address, mitigate, and resolve the severe nursing shortage in the United States.

26.    Despite Arkansas Heart Hospital's completing the necessary steps to obtain its requested PWDs, DOL has acted arbitrarily and in bad faith by unreasonably failing to adjudicate the Hospital's PWD Applications.

### *U.S. Born Nurses, Foreign Born Nurses, and the Entire Healthcare System Face Significant Hardship Due to DOL Inaction*

27.    Arkansas Heart and the patients it serves regionally are currently facing significant harm and hardship as a result of the ongoing nursing shortage crisis.  Unfortunately, DOL itself has perpetuated these harms and hardships by its virtual standstill in adjudicating the Hospital's long-pending PWD Applications requisite to remedy the crisis by the hiring of foreign national Registered Nurses per the EB-3 process.

28.    According to media reports, the proactive effort to recruit and hire nurses from foreign countries to address the prominent and harmful nursing shortage is not a practice limited to Arkansas Heart.[5]  There is high national demand for foreign health care professionals to

---

[5] See Nick Ehil, "Short-Staffed and COVID-Battered, U.S. Hospitals are Hiring More Foreign Nurses," National Public Radio (Jan. 6, 2022) (available at: https://www.npr.org/sections/health-shots/2022/01/06/1069369625/short-staffed-and-covid-battered-u-s-hospitals-are-hiring-more-foreign-nurses

immigrate to the United States and provide their vital services; indeed, there is currently a backlog of more than 5,000 international nurses awaiting final visa approval. The surge of hospitals engaging in this practice demonstrates that hiring foreign Registered Nurses constitutes an integral solution for resolving the nursing shortage crisis currently plaguing the United States healthcare system.

29.     Currently, the available cadre of domestic healthcare professionals is insufficient to redress staffing shortages.  Following the pandemic—and as a result of the demanding nature of the profession itself—nurses are beyond exhausted, burnt out, and tired.  As a result, Registered Nurses are retiring in increasing numbers, thus exponentially intensifying the critical shortage of healthcare professionals in the United States.

30.     The weighty burden of providing for nursing care and service cannot be left solely to fall upon the backs of United States national Registered Nurses.  There exists an immediate need for an infusion of their ranks flowing from sources external to the domestic workforce.  Recruiting foreign Registered Nurses benefits Registered Nurses currently serving patients, the intending immigrant Registered Nurses themselves, and our Nation's healthcare system, public interests, and citizenry overall.

31.     There are not enough domestic Registered Nurses to fill the gap.  An insufficient number of nurses are graduating from educational institutions in the United States to keep up with the demand.  Some hospitals have hired traveling nurses in the past; however, this has proven to be prohibitively expensive for most healthcare facilities.[6]

---

[6] Amy Taxin, "U.S. Hospitals Seek Foreign Nurses Amid Pandemic Strain," Associated Press (PBS) (Feb. 3, 2022) (available at:   https://www.pbs.org/newshour/health/u-s-hospitals-seek-foreign-nurses-amid-pandemic-strain

32.     The nursing shortage crisis is not only a practical problem, but an ethical and social quandary.  The morally righteous pathway in this situation is to exhaust all potential solutions to combat the nursing shortage and protect the health and wellbeing of medical professionals as well as the needs and interests of United States citizen and resident patients in need of medical assistance.  The healthcare system cannot protect and serve the United States population if it lacks sufficient and proper resources, i.e. nursing staff sufficient to meet demands for medical care and treatment.

### The "TRAC Factors" Support Arkansas Heart's Claim of Unreasonable Agency Delay

33.     In determining whether or not an agency delay is unreasonable for the purposes of APA and mandamus suits, numerous courts have adopted the "TRAC Factors" outlined in Telecomms, Research & Action Ctr. V. F.C.C. ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984).

34.     The TRAC factors are useful guidelines for the Court to determine whether an agency is responsible for an unreasonable delay, however, they are not set in stone guidelines in which all components must be met.  See TRAC, 750 F. 2d at 80.

35.     Among the TRAC factors are considerations of the hardships imposed by the delayed agency action, including guidance that delays are less tolerable "when human health and welfare are at stake" rather than simply economic interests.  TRAC, 750 F.2d 70, 80 (D.C. Cir. 1984).  Additionally, the reasonableness of delay must be judged in light of the Government's justifications for such delays.  Kashkool v. Chertoff, 553 F. Supp. 2d 1131 (D. Ariz. 2008) (citing Fraga v. Smith, 607 F. Supp. 517, 522 (D. Or. 1985)).

36.     In this case, there are genuine concerns of health and welfare relating to DOL's unreasonable delay in issuing the PWDs requested by Arkansas Heart.  This unreasonable delay is

contributing to and perpetuating the National nursing shortage crisis playing out within the Arkansas Heart community.

37.     According to leading experts, there are multiple points of causation for the nursing shortage:  an aging population, an aging work force, and nurse burnout.[7]  As of now, the United States is seeing the highest number of workers over the age of sixty-five (65) than any other point in its history.  This, of course, means the population who arguably requires the most frequent, lifesaving medical assistance and treatment is looming large over an already strained and limited healthcare system.  Additionally, the nursing workforce itself is aging.  A third of the nursing workforce will be retirement age in the next five (5) to ten (10) years.  The natural occurrence of retirements and the exponentially increasing rate that nurses are leaving the profession is a major contributing factor to the current nursing shortage.  This shortage has been further exacerbated by the level of burnout nurses are experiencing; nurses were dramatically overworked during the pandemic and are now more overworked than ever due to staffing shortages; additionally, a significant number of nurses report they are not fulfilled by a career in nursing and are contemplating a career change.

38.     According to Mayo Clinic's Wellbeing Index, burnout generally is described as "emotional, mental, and physical exhaustion caused by excessive and prolonged stress."[8] Particular to nurses, burnout often impacts their personal lives, the patients they treat and care for, and the institutions, facilities, and organizations they work with.  Nearly four (4) out of ten (10) nurses drive to work dreading their shift; experience an extreme lack of empathy while caring for

---

[7] See L. Haddad, P. Annamaraju, and T. Toney-Butler, "Nursing Shortage," StatPearls (Feb. 22, 2022) (available at: https://www.ncbi.nlm.nih.gov/books/NBK493175/).

[8] See Mayo Clinic, "Nurse Burnout:  Everything You Need to Know About Nurse Burnout," (2019) (available at:  https://www.mywellbeingindex.org/nurse-burnout).

their patients; and have become dissatisfied with their profession.  Nurse burnout is a condition that needs to be treated with concern as it not only impacts the wellbeing of nurses but the care of patients and administration of hospitals.  Long work hours, poor work environments, and greater workloads are the causes of the serious cases of nurse burnout.

39.     The burnout being felt and experienced by nurses across our Nation—resulting from long hours, heavy workloads, and insufficient staffing—can be readily addressed with the recruitment and infusion of foreign Registered Nurses to assist in the administration of our healthcare system in the United States.

40.     The above-described health and welfare concerns from those who work within the healthcare system and those who benefit from such system balance the TRAC factors in favor of Arkansas Heart, especially in the absence of any justification for the delay by DOL; lack of competing priorities; and the nature and extent of interests prejudiced by the delay, to wit: provision of timely, effective, and affordable medical care to United States citizens and residents, mental health and wellbeing of domestic nursing staff, and efficient administration of healthcare facilities, clinics, and hospitals across the Nation.

41.     The DOL's unreasonable adjudicatory delay in issuing the PWD requested by Arkansas Heart is without justification, arbitrary, unwarranted, and fails to relate to any stated or ascertained, legitimate Government objective.

### *Arkansas Heart Hospital Has Exhausted*
### *All Available Potential Remedies*

42.     Arkansas Heart has exhausted all available administrative or potential remedies.

43.     In order to complete the Permanent Labor Certification process, the first mandatory requirement is to obtain a PWD from the NPWC.  Arkansas Heart Hospital has complied with this prerequisite by filing a Form ETA-9141 with DOL.

44.     Arkansas Heart has taken all the necessary steps to obtain a PWD from DOL.

45.     No actions or inactions by Arkansas Heart have contributed to the extreme adjudicatory delay in issuance of a PWD by DOL.

**CLAIMS FOR RELIEF**

**COUNT I**
**Petition for Writ of Mandamus**
*28 U.S.C. § 1361*

46.     All the foregoing allegations in Paragraphs 1-45 above are repeated, re-alleged, and incorporated by reference as though set forth fully herein.

47.     A mandamus Plaintiff must demonstrate that:  (a) he or she has a clear right to the relief requested; (b) the Defendant has a clear duty to perform the act in questions; and (c) no other adequate remedy is available.  See Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 113 (D.D.C. 2005); see also Iddir v. INS, 301 F.3d 492, 499 (7th Cir. 2002); Patel v. Reno, 134 F.3d 929, 933 (9th Cir. 1997); Am. Acad. Of Religion v. Chertoff, 463 F. Supp. 2d 400, 420 (S.D.N.Y. 2006). Plaintiff meets these criteria.

48.     First, Arkansas Heart has a clear right to relief requested.  In accordance 20 C.F.R. § 656.40(a), Arkansas Heart filed two (2) PWD Applications with DOL "on a form or in a manner prescribed by OFLC."  See 20 C.F.R. § 656.40(a).  As such, "the NPC ***shall*** receive and process prevailing wage determination requests in accordance with [ ] regulations and with Department guidance . . . [and] ***will provide*** the employer with an appropriate prevailing wage rate . . . [and] ***shall*** determine the wage in accordance with sec. 212(t) of the INA."  Id. (emphasis added). Accordingly, the Hospital has completed all steps necessary to advance the Permanent Labor Certification process per issuance of a PWD by DOL.

49.     Second, Defendants have a clear duty to act upon and adjudicate Arkansas Heart's PWD applications.  Id.  Moreover, Congress has opined that applications for an immigrant benefit—including PWD Applications—should be adjudicated within one-hundred (180) days of initial filing of the application.  See 8 U.S.C. § 1571(b).  Defendants have failed to meet their legal obligation as no final adjudication has been made on Arkansas Heart's PWD Application for over three-hundred and forty-two (342) days as of the date of this filing.

50.     Third, the Court should compel Defendants to adjudicate Arkansas Heart's PWD Applications because no other adequate remedy is available.  Defendants have unreasonably failed to perform their clear duty to act.  Arkansas Heart has no other remedy aside from seeking judicial redress.  See 28 U.S.C. § 1361; 28 U.S.C. § 1331.

51.     Finally, not only has Arkansas Heart Hospital demonstrated that they have a right to relief, Defendants have a clear duty to act, and that no other adequate remedy is available, but the delay involved is so patently unreasonable and egregious to warrant mandamus relief.  See Core Comms, Inc. v. FCC, 531 F.3d 849, 855 (D.C. Cir. 2008).  Inexplicably, the PWD Applications filed by Arkansas Heart have been pending in excess of one-hundred thirty-six days (136) beyond the average processing time for PWD Applications, which currently averages two-hundred and five (205) days.  Put another way, Arkansas Heart's PWD Applications—seeking determination by DOL of "the average wage paid to similarly employed workers in a specific occupation in the area of intended employment," see 20 C.F.R. § 656.3, concerning an ordinary, common, regular, and traditional occupation (nursing)—are currently at one-hundred sixty-five (165) percent of the average processing time by DOL for PWD Applications overall.  Per its report above, DOL has issued over ninety-six (96) percent of PWDs requested in April 2022, the same

month Arkansas Heart filed its PWD Applications.  Yet the PWD Applications at issue herein remain pending.

52.     The delay DOL has perpetuated related to Arkansas Heart's PWD Applications has precluded the Hospital from progressing its EB-3 process directly aimed at mitigating the ongoing nursing shortage crisis affecting the entire healthcare system in the United States.  In turn, DOL's unreasonable delay in issuing the requested PWDs is detrimentally impacting the administration of healthcare services by Arkansas Heart, the workload and well-being of its nurses, and patients alike.  The myriad of health and welfare concerns at issue militate for mandamus relief in Arkansas Heart's favor.

53.     Defendants' delay is without justification and has forced Arkansas Heart to turn to this Court for relief as its last resort.  It is obvious that without judicial intervention, DOL will continue to unduly prolong absent any justification issuance of the PWDs Arkansas Heart requires to move forward with its recruitment and employment of foreign Registered Nurses.

## COUNT II
### Violation of the Administrative Procedure Act
### *5 U.S.C. § 706, et seq.*

54.     All the foregoing allegations in Paragraphs 1-45 above are repeated, re-alleged, and incorporated by reference as though set forth fully herein.

55.     Section 706(1) of Title 5, United States Code, provides that a reviewing Court shall compel agency action unreasonably delayed.

56.     Arkansas Heart has a clear right to receive an adjudication on its PWD Applications.  See 5 U.S.C. § 706(1); 8 U.S.C. § 1571(b); see also 20 C.F.R. § 656.40(a).

57.     DOL's failure to act has harmed and continues to harm Arkansas Heart as a medical provider, its current staff of Registered Nurses, and patients.

58.     There are no other adequate remedies available.

59.     DOL's actions constitute unreasonable delay in violation of the APA.

## COUNT III
### Bad Faith

60.     All the foregoing allegations in Paragraphs 1-45 above are repeated, re-alleged, and incorporated by reference as though set forth fully herein.

61.     Arkansas Heart has submitted all necessary and requisite forms, information, documents, and items for DOL to issue PWDs, as requested.

62.     DOL has articulated no bona fide, facially legitimate, or reasonable basis for its failure and/or refusal to adjudicate both of Arkansas Heart's PWD Applications.

63.     As a direct and proximate result of the unreasonable delay, Arkansas Heart is precluded from moving forward with its EB-3 process—aimed at recruitment and employment of foreign Registered Nurses to mitigate its shortage of nursing staff—in a timely and effective manner.

64.     Arkansas Heart has demonstrated a strong showing of bad faith or improper behavior because DOL has acted and is acting in a manner contradictory to its public statements about the ongoing nursing shortage and National healthcare crisis by failing to provide the requested PWDs.  While DOL has acknowledged an extreme nursing shortage—including its implementation of an $80 million grant program to develop the profession—it has held in abeyance Arkansas Heart's PWD Applications while processing ninety-six (96) percent of PWD Applications submitted concurrent with the Hospital's requests.  This amounts to both contradictory and harmful behavior.

65. This Court may invoke established exceptions and compel discovery in this case to look beyond the administrative record underlying DOL's extreme and unreasonable delay flowing from an apparent or established contrived and pretextual rationale.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Arkansas Heart Hospital, LLC respectfully prays that this Court grant the following relief:

(1)   Issue a Writ of Mandamus compelling DOL to adjudicate both of Arkansas Heart's PWD Applications within thirty (30) days of entry of judgment in this action;

(2)   Enter a declaratory judgment that DOL's unreasonable delay violates the INA, the APA, and federal regulations, because its unlawfully withheld and unreasonable delay is both arbitrary and capricious;

(4)   Award Arkansas Heart its reasonable costs and attorneys' fees incurred in this action under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(2); and

(5)   Grant such other and further relief as this Court deems appropriate, just, or equitable under the circumstances.

Date:   March 15, 2023                    Respectfully submitted,

**DEMPSEY LAW, PLLC**

/s/ Christopher W. Dempsey_____
CHRISTOPHER W. DEMPSEY
D.D.C. No. AR0006
50 N Laura Street, Suite 2500
Jacksonville, Florida 32202
Telephone:  (571) 289-6330
Fax:  (904) 587-0372
Email: chris@cdempseylaw.com

*Attorney for Plaintiff*